# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE AUDI LITIGATION ) | |
| ) | |
| PAUL PERONA, MR. LEASING, INC., ) | |
| EDWARD ZUREK, ROBERT C. IZENSTARK, ) | |
| GERALDINE STUPP, SILVERMAN & ) | Case No. 05-cv-4698 |
| MAILMAN, P.C., LYNN GARBER, RAYMOND ) | |
| LORAH, DONALD S. MALAWER, ISADOR ) | Judge Joan B. Gottschall |
| WEISENFELNER, NASSAU-SUFFOLK ) | |
| FROZEN FOOD CORP., and JEROME D. ) | Magistrate Judge Cole |
| O'CONNELL, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| VOLKSWAGEN OF AMERICA, INC., ) | |
| AUDI AG, VOLKSWAGEN AG, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In 1987,[1] several groups of plaintiffs filed class action complaints in Cook County Circuit Court against Volkswagen of America, Inc., Volkswagen AG, and Audi AG (collectively, "the defendants"). Each of the complaints asserted a variety of state law claims stemming from the alleged "unintended acceleration" of certain Audi 5000 automobiles. The complaints eventually

---

[1] The parties' briefs reflect a discrepancy concerning the date on which the lawsuit in this case was originally filed. The plaintiffs' opening brief states that the suit was filed in 1999; the defendants claim that the action was filed in 1987. The plaintiffs' reply brief appears to accept the defendants' date. Any discrepancy ultimately is irrelevant, however, since at all events, the complaint was filed long before the passage of the Class Action Fairness Act, which, as is discussed more fully below, is the only significant date in question.

were consolidated, and in subsequent years, many of the claims were dropped or dismissed. Although it has been wending its way through the legal system for 17 years, the case remains at the pleading stage. *See* Notice of Removal ¶ 9; Pl.'s Reply in Supp. Mot. Remand, at 6. Apparently, the putative class has yet to be formally certified. *Id*.

The current complaint – the Sixth Amended Complaint ("complaint") – alleges a single cause of action under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFDA"), 815 ILCS 505/1 *et seq*. On July 20, 2005, the plaintiffs moved to "supplement" the complaint by adding a strict liability claim. On August 16, 2005, the defendants attempted to remove the action to this court, arguing that jurisdiction was proper under: (1) the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005), ("CAFA" or "the Act"); and (2) the diversity and supplemental jurisdiction statutes, 28 U.S.C. § 1332 and 28 U.S.C. § 1367, respectively. The plaintiffs have moved to remand the case to state court. For the reasons that follow, the motion to remand is granted.[2]

**DISCUSSION**

**A.    Legal Standard**

Removal of actions to federal court is governed by 28 U.S.C. § 1441, which provides that a defendant may remove a case to federal court only if the federal district court would have original subject matter jurisdiction over the action. *Disher v. Citigroup Global Mkt., Inc.*, 419 F.3d 649, 653 (7th Cir. 2005). The removal statute is to be interpreted narrowly and courts should presume that

---

[2] In light of this litigation's long and complicated history, much of which is not directly relevant to the instant motion, the court refrains from providing an exhaustive rendition of the facts. A more complete account of the background can be found in the Illinois Court of Appeals's decision in *Perona v. Volkswagen of America, Inc.*, 684 N.E.2d 859 ( Ill. App. Ct. 1997).

the plaintiff may choose his or her forum. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). Any doubt regarding jurisdiction should be resolved in favor of the states.[3] *Id.* The burden of establishing federal jurisdiction falls on the party seeking removal. *Id*; *see also Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005) (holding that the burden of establishing jurisdiction remains on the defendant after passage of CAFA).

**B.     The Class Action Fairness Act**

CAFA amended 28 U.S.C. § 1332(d) to confer federal jurisdiction over class actions where there is minimal diversity (i.e., where there is diversity between any defendant and any plaintiff class member), where the class consists of at least 100 members, and where the amount in controversy exceeds $5 million. *See, e.g.*, *Prime Care of Northeast KS, LLC v. Humana Ins. Co.*, No. 06-3024, 2006 WL 1305229, at *1 (10th Cir. May 12, 2006). In addition, CAFA contains a removal provision that permits any defendant to remove a qualifying action without regard to the residence or consent of other defendants. The Act is not retroactive, however, and thus applies only to class actions that are commenced on or after the date of CAFA's enactment: February 18, 2005. *See, e.g.*, *Bemis v. Allied Property & Cas. Ins. Co.*, No. 05-CV-751-DRH, 2006 WL 1064067, at *2 (S.D. Ill. Apr. 20, 2006).

Although the instant suit was filed well before CAFA's enactment, the defendants claim that the Act is applicable. Specifically, defendants argue that by supplementing the complaint in July

---

[3] It might be argued that the presumption in favor of the states no longer applies after CAFA. Courts deciding removal cases post-CAFA, however, have continued to reaffirm the traditional proposition that doubts about jurisdiction should be resolved in favor of remand. *See, e.g.*, *Orbitz, LLC v. Worldspan, L.P.*, No. 05 C 5972, 2006 WL 903251, at *1 (N.D. Ill. Apr. 3, 2006); *Samuel Trading, LLC v. Diversified Group, Inc.*, 420 F. Supp. 2d 885, 889 (N.D. Ill. 2006).

2005, the plaintiffs commenced a new action for purposes of CAFA.  In the past year, the Seventh Circuit has addressed on a number of occasions the question of when a new action can be said to have commenced under CAFA.  In these cases, the Seventh Circuit has held that "routine" amendments to complaints are not sufficient to commence new suits under CAFA.  Rather, a new action is triggered only by a step "sufficiently distinct that courts would treat it as independent for statute of limitations purposes." *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 807 (7th Cir. 2005) ("*Knudson I*").  The paradigmatic case in which an amendment does not commence a new suit is where the amendment relates back to the original complaint.  *See, e.g.*, *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787-88 (7th Cir. 2006).  Thus, courts look to relation-back law to determine whether an amendment commences a new action for CAFA purposes.  *Id*. ("The clearest case in which an amended complaint does not kick off a new suit is where the amendment 'relates back' to the original complaint.  For then the fact that the statute of limitations has run ... is not a bar, as it would be if the amended complaint did not relate back-that is, if it stated a new claim and thus kicked off a new suit.").  Moreover, since the question for CAFA's purposes is whether a new action has been commenced in *state court*, state relation-back law, rather than federal practice, supplies the rule of decision.  *See, e.g.*, *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005); *see also Phillips*, 435 F.3d at 787 ("Since the question ... is whether adding named plaintiffs commences a new suit in state court, the answer should depend on state procedural law.").

Applying these considerations, the Seventh Circuit has held that amending a complaint to add or substitute named plaintiffs or class representatives does not commence a new suit under CAFA.  *Phillips*, 435 F.3d at 786.  The Seventh Circuit also has held that changing a class's definition or membership does not commence new suit under CAFA.  *See, e.g.*, *Schorsch*, 417 F.3d

at 750; *Knudsen I*, 411 F.3d at 807; *Schillinger v. Union Pacific R. Co.*, 425 F.3d 330, 334 (7th Cir. 2005).

More relevant to the instant case, however, is *Knudsen v. Liberty Mut. Ins. Co.*, 435 F.3d 755 (7th Cir. 2006) ("*Knudson II*"), which involved the addition of new *claims* to a suit after CAFA's enactment. The plaintiffs in *Knudson II* alleged that defendant, Liberty Mutual, systematically underpaid claims for medical services. Although the complaint had been filed long before CAFA's enactment, the plaintiffs later amended the class definition to include individuals insured not only by Liberty Mutual, but also by one of Liberty Mutual's subsidiaries. *Knudsen I*, 411 F.3d at 807. Liberty Mutual attempted to remove the suit pursuant to CAFA, and the Seventh Circuit held that the change in the class definition did not commence a new suit under CAFA. *Id.* at 808. After the court's decision, the plaintiffs amended their complaint once more, seeking to hold Liberty Mutual liable for all policies issued by any of its subsidiaries or affiliates. *Knudson II*, 435 F.3d at 755. The plaintiffs also requested that all claims for payment by all insureds on all of these policies everywhere in the nation be covered. *Id.* Finally, plaintiffs sought certification of a nationwide class, asking the court to disregard any difference in insurance and workers' compensation laws across the 50 states. *Id.*

The defendants once again attempted to remove the case to federal court. On appeal, the Seventh Circuit held that the changes presented new claims for relief. The court noted that in order for a new claim to relate back to an original pleading, the original pleading must furnish the defendant with notice of the events underlying the new claim. *Id.* at 757. Since Liberty Mutual was not responsible for adjusting demands for payment of all of its subsidiaries' and affiliates' policies, the court held that the original complaint afforded Liberty Mutual no notice that the plaintiff would

seek to hold it responsible for underpayment by its subsidiaries. *Id*. Hence, the court concluded: "as we intimated in *Knudsen I* and *Schorsch*, and now hold, a novel claim tacked on to an existing case commences new litigation for purposes of the Class Action Fairness Act." *Id*. at 758.

At first glance, *Knudson II*'s holding might seem to suggest the same result here, since it could be argued that the plaintiffs' supplement essentially tacked a strict liability claim on to the existing complaint alleging violations of the ICFDPA. Closer examination of Illinois relation-back law, however, shows that this is not the case. In order for an amended pleading to relate back under Illinois law, the cause of action set out in the amended pleading need not be substantially the same as that stated in the original pleading. *Cannon v. Bryant*, 554 N.E.2d 489, 491 (Ill. App. Ct. 1990). Rather, a claim relates back when it arises out of the same *transaction or occurrence* as the one identified in the original complaint. *Schorsch*, 417 F.3d at 751 (citing *Boatmen's National Bank of Belleville v. Direct Lines, Inc.*, 656 N.E.2d 1101, 1107 (Ill. 1995)); *see also* 735 ILCS 5/2-616. The rationale behind the "same transaction or occurrence" rule, as noted in *Knudson II*, is that a defendant will not be prejudiced by an amendment so long as he had notice of the *facts* that form the basis of the claim asserted against him. *Castro v. Bellucci*, 789 N.E.2d 784, 788 (Ill. App. Ct. 2003); *Marek v. O.B. Gyne Specialists II, S.C.*, 746 N.E.2d 1, 8 (Ill. App. Ct. 2001).[4] Moreover, courts repeatedly have emphasized that Illinois' relation-back doctrine is to be applied liberally. *See, e.g.*, *Maliszewski v. Human Rights Com'n*, 646 N.E.2d 625, 627-28 (Ill. App. Ct. 1995) (collecting cases). Relation-back, under Illinois law, therefore depends not on similarity between

---

[4] Apparently, the state court did not directly address the question whether the supplement related back to the original complaint. On this point, plaintiffs assert that "the state court itself evidently deemed the supplement, or additional cause of action, minor – it granted plaintiff's motion for leave to file the complaint supplement rather than denying the motion or requiring plaintiffs to file a new amended complaint." Mot. to Remand ¶ 11.

the originally and later asserted claims, but on whether the claims are based on the same transaction or occurrence. *See, e.g.*, *Bilut v. Northwestern University*, 692 N.E.2d 1327, 1333 (Ill. App. Ct. 1998) ("Our supreme court has stated that the test for whether an amended complaint relates back ... to the original pleading for statute of limitations purposes does not depend on whether the amended complaint asserts the same cause of action pleaded in the original complaint. Instead, the focus is on the identity of the transaction or occurrence. Under the same transaction or occurrence standard, the focus is on the facts and occurrence alleged in the original complaint, not the name of the cause of action or legal theory used to support the claim for damages.") (internal citations omitted).

Here, plaintiffs' strict liability claim arose out of the same transaction or occurrence as their consumer fraud claim. In setting forth the factual basis for its consumer fraud claim, the Sixth Amended Complaint alleges that "Audi 5000 automobiles with automatic transmission manufactured in model years 1984-1986 are defective in design or production in that they suddenly and unintendedly surge, and/or accelerate when the driver shifts into the forward of [sic] reverse gear. In addition, or in the alternative, the design of the Audi 5000 is such as to cause an increased, unprecedented likelihood of driver error, such increased likelihood causing an unreasonable risk of harm." Pl.'s Sixth Am. Compl. ¶ 25. These alleged design or manufacturing defects also form the basis for the strict liability claim. The gravamen of the strict liability claim is that the defendants breached their duty by manufacturing and designing defective vehicles. The gravamen of the consumer fraud claim is that the defendants provided the vehicles to the public without disclosing the defects. *Id.* ¶ 40. Both claims arise out of the making and selling of defectively designed or manufactured vehicles. Hence, in contrast to *Knudson II*, the plaintiffs' strict liability claim relates

back to the earlier pleading and does not commence a new litigation under CAFA.

Defendants point to a number of the specific defects identified in the supplement and argue that, because these differ from certain of the allegations made in the complaint, the strict liability claim cannot relate back. As an initial matter, this argument misconstrues the level of generality at which the relation-back inquiry must be conducted: the central question is whether the strict liability and consumer fraud claims arose out of the same transaction or occurrence, not whether every individual factual element of the strict liability claim is identical to every individual factual element of the consumer fraud claim. Even when considered at such a level of specificity, however, the court concludes that the defendants were given adequate notice.

> Paragraph 27 of the Sixth Amended Complaint states as follows:
>
> The defects in design or manufacture include the following which independently or in connection with each other cause said unintended acceleration and/or create a likelihood of driver error causing an unreasonable risk of harm:
>
> A. the lever and cable system linking the transmission and shift lever;
> B. the break and gas pedal placement and separation;
> C. the cruise control system;
> D. the shift lock system;

Sixth Am. Compl. ¶ 27.[5] The supplement identifies the following design or manufacturing defects:

> (a) the break and gas pedal placement and separation;
> (b) defects in the Idle valve or high idling in general;
> (c) the similarities between the shape and size of the gas pedal and the break pedal;
> (d) failure to install the shift lock system;
> (e) the floor mat design or ill fitting floor mats;
> (f) the break pedal's inability to override the accelerator when pressure was applied to both pedals simultaneously.

---

[5] Defendants claim that in the course of discovery the plaintiffs abandoned the allegations in subparagraphs A (transmission linkage) and C (cruise control), leaving only the allegations of defects in the break and gas pedal placement and separation and in the shift lock system. The plaintiffs do not dispute the defendants' representations.

Supp. to Sixth Am. Compl. ¶ 4.

As an initial matter, the court notes the defendants' concession that paragraph 4(a) of the supplement "essentially repeats subparagraph 27B of the Sixth Amended Complaint." Resp. at 11. This is tantamount to admitting that the defendants were put on notice of that claim. Similarly, paragraph 4(c) of the supplement, which asserts defects relating to pedal size and shape, is so similar to paragraph 27B that the latter can be said to have put the defendants on notice of the former. At the very least, therefore, the strict liability claim relates back insofar as it alleges a design or manufacturing defect involving break and gas pedal placement.

Defendants argue that they would be prejudiced by the claim in paragraph 4(f) of the supplement (which alleges the break pedal's inability to override the accelerator when pressure was applied to both pedals simultaneously) because the plaintiffs allegedly disavowed any basis for such a claim in entering into a conditional settlement agreement and release 17 years ago. It is unclear, however, why those representations should be dispositive here.[6] For one thing, the agreement in question ultimately was aborted. More importantly, whatever position they might have taken for the purposes of the settlement, the plaintiffs identified the shift lock system as the source of a manufacturing or design defect in the Sixth Amended Complaint. That allegation was sufficient to have put defendants on notice of the defects alleged in paragraph 4(f) of the supplement.

Next, defendants claim that the allegation in paragraph 4(d) of the supplement ("failure to install the shift lock system") is "diametrically opposite of" the allegation in paragraph 27D of the

---

[6] The court also rejects any contention that the defendants have suffered prejudice merely by virtue of the length of time between the filing of the original complaint in 1987 and the filing of the supplement in 2005. As noted above, the case remains at the pleading stage. Viewed developmentally (as opposed to chronologically), the case is still in its infancy.

Sixth Amended Complaint, which identifies "the shift lock system" as among the defects in question. The court sees no necessary contradiction between the language of the complaint and the language of the supplement. Paragraph 27D fails to elaborate on the way in which the shift lock system is allegedly defective. Given its indefiniteness, the assertion could be interpreted as claiming that the defect lay in the defendants' failure to install such a system. Both the complaint and the supplement identify the shift lock as a source of manufacturing and/or design defects. This is enough to have put the defendants on notice of the strict liability claim alleged in the supplement.

Finally, the defendants claim that the allegations in paragraphs 4(b) and 4(e) cannot relate back to the complaint because these claims are somehow derived from recall campaigns conducted during years outside the putative class period. Specifically, the defendants claim that the allegation in paragraph 4(b) (defects in the idle valve) pertains to a recall of 1978-1982 model year vehicles, and that the allegation in paragraph 4(e) (floor mat design) relates to certain vehicles sold in 1986-1987. Since the plaintiff class consists of purchasers of 1984-1986 Audi 5000 vehicles, defendants argue that they could never have anticipated the plaintiffs' intention to assert the claims relating to the idle valve and floor mats.

The court finds this argument unpersuasive. In particular, the court sees no reason why the allegations in paragraphs 4(b) and 4(e) must be interpreted as relating to the recall dates in question. The plaintiffs nowhere specifically assert that the defects in question pertain to specific model years. Indeed, the plaintiffs note that they do not seek to change the putative class definition (which clearly would result if the strict liability claim were based on defects in vehicles from the 1978-1982 and 1986-87 recalls). The court thus interprets the allegations at paragraphs 4(b) and 4(e) as pertaining to model years 1984-1986. So understood, the allegations regarding defects in idling and floor mat

design relate back by virtue of the Sixth Amended Complaint's general allegations regarding design defects.

The court thus concludes, particularly in view of Illinois' liberal relation-back standard, that the plaintiffs' strict liability claim arose out of the same transaction or occurrence as their consumer fraud claim and that the supplement therefore did not commence a new litigation for purposes of CAFA.[7] Bearing in mind that any doubt about jurisdiction is to be resolved in favor of remand, *Allied-Signal*, 985 F.2d at 911, the court holds that defendants' attempt to remove the case under CAFA was improper.

---

[7] The defendants' additional arguments similarly are unconvincing. For example, defendants argue that plaintiffs' strict liability claim cannot relate back to the consumer fraud claim because the two are premised on different legal theories and require proof of a "totally different quality and character." Defendants do not explain, however, why differences in theory are relevant to the relation-back determination, and cite no legal authority in support of their contention. Indeed, case authority runs to the contrary. *See, e.g.*, *Longust v. Peabody Coal Co.*, 502 N.E.2d 1096, 1097 (Ill. App. Ct. 1986) ("The addition of new theories of recovery does not prevent relation back of an amendment where, as here, the amendment and the original pleading are premised on the same basic tortious conduct and the same resulting injuries."). Similarly, the defendants cite only a single case, *Weber v. Cueto*, 624 N.E.2d 442, 448 (Ill. App. Ct. 1993), for the proposition that differences in *proof* are relevant to the relation-back inquiry. However, *Cueto* cites no other case in which an Illinois court has so held. Having found only one other such case, the court declines to follow this limited line of precedent. *See Vincent v. Williams*, 664 N.E.2d 650, 655 (Ill. App. Ct. 1996).

Defendants also argue that relation-back obtains only where the defendant has "notice not only of the operative facts, but also of the plaintiff's intention to assert a claim on the basis of those facts." Since the Sixth Amended Complaint showed no intention to assert a strict liability claim, defendants argue, the strict liability claim cannot relate back. Again, support for the defendants' argument is highly dubious. Defendants cite a single case *McCorry v. Gooneratne*, 775 N.E.2d 591 (Ill. App. Ct. 2002), for the proposition that relation-back obtains only where the defendant has "notice not only of the operative facts, but also of the plaintiff's intention to assert a claim on the basis of those facts." *Id.* at 601. However, *McCorry* is the only decision cited by defendants announcing such a requirement. The decision has been explicitly questioned by later cases. *See Grove v. Carle Foundation Hosp.*, No. 4-05-0488, 2006 WL 846713, at *14 (Ill. App. Ct. Mar. 28, 2006) (Cook, J., dissenting).

-11-

## C. Diversity and Supplemental Jurisdiction

Defendants next argue that, independent of whether CAFA applies to the present action, the court may exercise jurisdiction over the case pursuant to the diversity and supplemental jurisdiction statutes. Defendants first argue that complete diversity exists between all of the named plaintiffs and all of the defendants. *See, e.g.*, *F. & H.R. Farman-Farmaian Consulting Engineers Firm v. Harza Engineering Co.*, 882 F.2d 281, 284 (7th Cir. 1989) (noting that in class actions, only the citizenship of the named plaintiffs matters for diversity purposes) (citing *Snyder v. Harris*, 394 U.S. 332, 340 (1969)). Defendants next argue that the that the amount-in-controversy requirement is met under the Supreme Court's recent decision in *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 125 S. Ct. 2611 (2005), which held that "where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction." *Id*. at 2615.

Even if the defendants are correct in asserting that the jurisdictional prerequisites are met, however, it does not follow that removal is permitted. Rather, under 28 U.S.C. § 1446, defendants are required to file a notice of removal within thirty days of having received the "amended pleading, motion, order or other paper" from which it could have been ascertained that the case had become removable. This they failed to do. It is true that the defendants filed their notice of removal within thirty days of the filing of the plaintiffs' supplement; but that fact is of no significance, since the defendants do not contend that the addition of the strict liability claim

had any bearing on the relevant jurisdictional prerequisites: the supplement did not change the parties' citizenship, and the amount-in-controversy requirement already had been met. Of course, the defendants might argue that it was only after *Allapattah* that it became clear that the court could exercise jurisdiction over the unnamed class members. But even if the action became removable once *Allapattah* had been issued, the defendants' attempt to remove still was untimely: *Allapattah* was decided on June 23, 2005; the notice of removal was not filed until almost two months later, on August 16, 2005. Hence, the court concludes that removal under 28 U.S.C. 1332 and 28 U.S.C. 1367 was not permissible.

Having determined that removal was proper under neither CAFA nor under the diversity and supplemental jurisdiction statutes, the court remands the case to the Circuit Court of Cook County, Illinois.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand is granted.

ENTER:

/s/_____
JOAN B. GOTTSCHALL
United States District Judge

Dated: June 1, 2006